## No. 9400.
### James H. Muse vs. William Acey.

This is an action for slander upon the professional character of the plaintiff, which is proved by the concordant testimony of his fellow-citizens and brethren of the bar to be above reproach. The evidence, however, explaining the meaning of the words and the connection in which they were used, acquits defendant of the charge of slander, as found by the jury who tried the case.

APPEAL from the Eighteenth District Court, Parish of Tangipahoa. *Thompson*, J.

*J. H. Muse* and *Ellis & Ellis* for Plaintiff and Appellant.

*E. F. Russell* for Defendant and Appellee.

The opinion of the Court was delivered by

Fenner, J. The plaintiff, a learned and venerable counsel of this Court, claims damages from the defendant, for an alleged wanton and malicious slander, in stating to two of petitioner's clients for whom the said defendant was about to pay into the hands of plaintiff certain moneys realized from the sale of certain property recovered for them, that "if the money was paid into the hands of plaintiff, they would never get a dollar of it; that you had better be on hand and get your

part of the money; if the money got into Mr. Muse's hands, and you don't mind, you will never get a d——d dollar of it."

The words, in their naked import and unexplained, certainly suggest a foul aspersion upon plaintiff's honesty and fidelity to his clients.

It is not astonishing that, as reported to him, they should have aroused his just indignation, and it is a credit to his law abiding character that he should have sought redress from the public justice rather than by private vengeance.

Unexplained they present every element of actionable slander, being false, unprivileged, injurious, wanton and malicious.

The concordant testimony of his brethren of the bar to the unsullied integrity of plaintiff's professional life during a practice of more than half a century in the courts of this State, should hardly have been necessary before any tribunal of Louisiana, so public and wide-spread has been the well-earned reputation of the plaintiff.

If the slander had been proved as charged and not so explained as to remove the apparent insinuations, it would be hardly credible that the verdict of a jury of plaintiff's countrymen, approved by the excellent judge of the District Court, should have denied relief.

Such, however, is the fact, and after a critical study of the evidence in the record, we find ourselves constrained to approve their finding.

The witnesses to whom the defendant's remarks were addressed and who reported them to defendant, give a very different account of the conversation when testifying in the case.

We quote the testimony of one of them, Mr. Shilling;

"Mr. Acy said he was going to pay over to Mr. Muse, our attorney, $600. Don't know exactly the words used, but he said he was going to pay over the $600 to Mr. Muse, and asked me and Mr. Alford if we had ever got anything clear yet, and we told him we had not. Well, said he, you won't get anything this time; as well as I remember, he said there was the Rivers compromise, which would take $200, and, said he, if your attorney has never received any percentage yet, if he claims it on the $1400, that will take $280, and, said he, there are some taxes to pay, and court expenses, clerk and sheriff's fees; and also something was said, I think, about clerk and sheriff fees in the city of New Orleans; and Mr. Acy said, if you don't mind there won't be a dollar left, or something of that kind, I don't remember exactly; this is about what took place between Mr. Acy, Mr. Alford and myself, as well as I remember. Mr. Acy said, I will have to pay the money over to

State ex rel. Williamson vs. Judge.

your attorney, and said further that if I did not mind, that there would not be anything left after paying costs, percentage and the Rivers compromise."

Obviously, this version robs the statement of all imputation upon the character of plaintiff.

It is positively confirmed by the testimony of defendant, and even that of the only remaining witness, Alford, while not so fully exculpatory, admits that Acey told him how the funds would be disposed of, and said "he was going to pay over $600 that day, but there was $200 to go for a compromise to Mr. Ellis or some one else; that there was sheriff's and clerk's fees and some taxes to be paid; and the balance would go to Mr. Muse or the Self heirs."

It seems in point of fact, that the distribution of the fund did substantially confirm the anticipations of the defendant, and the just and proper charges referred to, substantially absorbed it.

We need not discuss the evidence further.

We have no doubt that the judge and jury were as sensible as we are of the just reputation of the plaintiff, for professional integrity, and would have been as prompt, as we would be, to mulct any slanderer thereof in damages; but they have concluded from the evidence adduced, that the defendant has established his innocence of any such charge, and has not intentionally or maliciously assailed the character of plaintiff.

We find their conclusion supported by the evidence ; and plaintiff's vindication is complete in the proof, that even slander has not dared to impugn his integrity.

Judgment affirmed.

Rehearing refused.